873 A.2d 372

**MISSION WEST PROPERTIES, L.P., et al.**

v.

**REPUBLIC PROPERTIES CORPORATION, et al.**

**No. 524, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

March 1, 2005.

Reconsideration Denied May 19, 2005.

18

Robert R. Moore, San Francisco, CA (Charles S. Hirsch, Robert A. Scott, Baltimore, on the brief), for Appellants.

Edward J. Tolchin, Fairfax, VA, for Appellees.

Panel: DAVIS, HOLLANDER and THEODORE G. BLOOM (retired, specially assigned), JJ.

DAVIS, Judge.

In this case, the parties involved include a publicly traded California real estate investment trust (REIT), six corporations, two limited partnerships, two trusts, a limited liability company, and five businessmen. The parties serve as general or limited partners, or officers or directors of the others. Further complicating matters, the litigants' dispute hinges upon the interrelationships among five contracts running between various permutations of the several parties. In short, we must disentangle a maze of interconnected business entities and determine their relationships en route to a resolution of this appeal.

The litigation began when appellees/cross-appellants Republic Properties Corp. (Republic), its CEO Steven Grigg, CFO David Peter, and Mentmore Partners LLC, a limited liability company owned by two directors of Republic, filed a complaint in the Circuit Court for Baltimore City against appellants/cross-appellees, Mission West Properties, L.P. (MWLP), and its general partner, Mission West Properties, Inc. (MWINC). Appellees' complaint alleged that appellants breached a joint-venture partnership agreement between them by failing to make distributions owed to appellees. Appellants defended those claims, arguing that no distributions were due because appellees had breached their obligations under the partnership agreement. Appellants also filed a five-count counter-complaint against appellees based on their alleged breach.

After a week-long bench trial, judgments were entered for appellees on their complaint and against appellants on the counter-complaint. Appellants noted this appeal and present-

ed five questions for our review. Appellees cross-appealed, presenting two questions. Upon our resolution of the following, we decline to reach the other questions presented:[1]

Did the circuit court err in concluding that it could assert personal jurisdiction over a Delaware limited partnership with its principal place of business in California, when the partnership's only contact with Maryland is that its corporate general partner is a Maryland corporation (with a principal place of business in California), and the general partner was served with process in Maryland?

We hold that the circuit court could not assert personal jurisdiction over MWLP, and, accordingly, we shall vacate the judgments against MWLP and MWINC. In view of our disposition of this appeal, we shall deny the Motion to Strike Reply Brief filed by appellants.

## FACTUAL BACKGROUND

Because we resolve this appeal on the jurisdictional issue, an exhaustive recitation of the facts is unnecessary. The

---

1. The issues, as set forth in appellants' brief are:

1. Whether the circuit court erred by ignoring the intent of the parties and the plain meaning of the lease at issue and thus finding that the failure to pay $10.5 million in tenant's initial improvements was not a breach of the lease.
2. Whether the circuit court erred by finding that Stellex had a reasonable time to cure its payment defaults when California Civil Code section 1657 specifically states the cure must be immediate.
3. Whether the circuit court erred by failing to expel plaintiffs from the HALP partnership, and failing to order plaintiffs to reimburse HALP $524,771, when it was found plaintiffs breached their fiduciary duty to Mission West LP.
4. Whether the circuit court properly asserted personal jurisdiction over Mission West LP, even though it was not incorporated in, held no property in, conducted no business in, and derived no benefits from the State of Maryland.
5. Whether the circuit court was able to issue a judgment when necessary and indispensable parties to the action were not before the court.
The questions presented on appellees' cross appeal are:
1. Did the trial court err in concluding that Republic Properties Corporation had a fiduciary duty to disclose information to appellants which it did not disclose?
2. Did the trial court err in not granting an injunction to appellees?

salient facts are limited to the identities of the various parties, and their connections to each other, to Maryland and to other states. Appended to the opinion herein is a diagram of these parties.

Stellex Microwave Systems, Inc. (Stellex Microwave) was a high-tech communications company with its principal place of business in Palo Alto, California. The company's management wanted to relocate its headquarters to the Silicon Valley region of California, but the company could not afford to build such a facility and could not obtain suitable financing. Stellex Microwave was a wholly-owned subsidiary of Stellex Industries, Inc. ("Stellex Industries"), also known as Stellex Technologies, Inc. Stellex Industries was a wholly-owned subsidiary of Mentmore Holdings Corporation, which, in turn, was owned by two trusts.

Stellex Microwave's management tried to negotiate a deal with Carl Berg, a prominent Silicon Valley real estate developer. He "controls" a California construction company called Berg & Berg Enterprises (B & B).[2] Berg is also president and CEO of MWINC, a real estate investment trust incorporated under the laws of California and reincorporated under the laws of Maryland, with its principal place of business in California. MWINC is the corporate general partner of MWLP, which itself is a Delaware limited partnership with its principal place of business in California. Nothing in the record shows that either MWINC or MWLP ever transacted any business in Maryland.

Stellex Microwave's negotiations with Berg were unsuccessful. As a fallback measure, Stellex Microwave contracted with Republic, a corporation organized under the laws of the District of Columbia, with its principal place of business there. Under their agreement, Republic was to provide a headquarters to Stellex Microwave.

---

**2.** We have not located in the record any indication of exactly what position Berg holds in B & B.

Steven Grigg and David Peter, both officers of Republic, restarted negotiations with Berg on behalf of Stellex Microwave. Through negotiations, Grigg, Peter, and Berg agreed that all the parties would form a joint-venture limited partnership to construct a headquarters for Stellex Microwave. The partnership would then lease the facility to that company, with the partnership itself being the landlord. B & B owned a suitable lot on Hellyer Avenue in San Jose, California, so they named their partnership the Hellyer Avenue Limited Partnership (HALP).

The constituents of HALP were MWLP, as managing general partner, Republic, as general partner, Grigg and Peter individually, as limited partners, and Mentmore Partners LLC, a Delaware company with its principal place of business in New York. Mentmore Partners was established by Richard Kramer and William Remley for the sole purpose of holding an interest in HALP.[3] MWLP held a 50% interest in the partnership, and the interests of all the other partners (all of whom were affiliated with Kramer and Remley) held the other 50%.

The HALP limited partnership agreement essentially conditioned the membership of all partners except MWLP on Stellex Microwave's payment of all its obligations under the lease. MWLP contends that one of those obligations was paying B & B for certain work Stellex Microwave hired B & B to do on the facility; appellees dispute that that payment was an obligation *under the lease.* MWLP asserts that payment was not timely made to B & B, that Stellex Microwave defaulted and the default was never cured, and accordingly, MWLP purported to expel all the other partners and stopped paying them their distributions from HALP's income.[4]

---

3. Kramer and Remley were officers or directors of Mentmore Holdings and of Republic. The trusts that owned Mentmore Holdings were affiliated with Kramer and Remley.

4. Reduced to the most simple terms offered by the parties as to what is truly in contention with respect to the merits of the instant controversy, what is really at issue can best be summed up by an exchange when

Appellees, therefore, brought suit against MWLP for the distributions they contend were owed. The circuit court denied appellants' motions to dismiss for lack of jurisdiction:[5]

I have had a chance over the luncheon recess to review the cases that were cited by Mr. Moore right before we broke, the *Jean [Springle] versus [Cottrell] Engineering Corporation* and *Hansford versus District of Columbia,* and while they are interesting, I am not sure they are really

appellant's counsel at oral argument before this Court was asked to confirm that TYCO had cured the alleged default and whether the only remaining dispute was the expulsion from HALP or the right to have an expulsion. Counsel responded:

Well, but TYCO cured in bankruptcy when they bought Stellex Microwave. So they did pay what Stellex Microwave owed under the lease. Yes, that's correct. But it still is a money issue to the extent that they are limited partners and they are entitled to fifty percent of the ongoing revenue and fifty percent of buildings. Right. Who's still in the partnership, a partnership that now is worth significantly more than what the distributions are. So I wouldn't agree that it's not the money, but I ... for the intent of initial improvements. The improvement work, yeah. That's at issue.

When the court pointed out, "that's ... how it began but that's ... what would be cured by TYCO," counsel responded:

That's correct. TYCO paid what was left which I think was about 8.5 million dollars a letter of credit was reduced two million dollars so that HALP is now in terms of the tentative initial improvements have been paid everything that they were anticipated at that point.... The question right now is not really who, well that's part of the question. The question, was the court correct in telling Mission West Properties, LP to pay the distributions up to the point of trial, which come to about a million dollars. That's what the court decided. And whether that decision is correct or not correct? Under the circumstances. "[And that takes us back] to whether there was a default in the payment, whether there was a default in the payment under the lease, whether there was not a default in the payment under the lease?"

5. This case was not specially assigned; however, the parties had argued their motions to dismiss for lack of personal jurisdiction and for failure to join necessary parties before the chambers judge. The motions were denied by the chambers judge in terse orders that stated "for reasons explained on the record at argument." Despite that reference to the explanation on-the-record by the chambers judge, we were unable to find any transcript of the hearing in the record or in the record extract. Appellants again raised the motions before the trial judge, and the ruling reproduced herein represents the basis of the denial of the motions to dismiss for failure to join necessary parties and lack of *in personam* jurisdiction.

precisely on point to some of the issues here. And beyond that, I am going to backtrack for a moment because I have also spent some time reviewing the issues that I made my ruling on earlier and, having now done so and agonized over those issues, and believing that there is, [indeed] not necessarily any virtue in consistency, and, indeed, consistency may be the hobgoblin of any kind of mind—considering the, I have thought again about the integration and the operation of the partnership statutes, the California Revised Partnership Act and, as it is characterized in the California Revised Limited Partnership Act, and the arguments presented and I'm now satisfied that my ruling earlier was incorrect. I don't believe that HELLYER is a necessary party [6] on a backtrack.

The real effect and import of the integration of those California Statutes and the principles of partnership law satisfy me that, because a general partner can be sued for obligations of the partnership and jointly and severally liable, and because we have here, at least in part, one general partner from HELLYER suing another general partner and another entity, that the interests of HELLYER are necessarily effectively represented and protected by Mission West. Without getting into the identities of what

---

**6.** Appellants had argued to the trial court that, pursuant to Md.Code (1999 Repl.Vol.), Corps. & Ass'ns (C.A.), § 10–101, *et. seq.* and Cal. Corp.Code, § 15665, the assets of a limited partnership belong to the partnership, and that HALP is a necessary and indispensable party because any judgment would have to be satisfied from HALP's assets. Further, any judgment in favor of appellees would impede HALP's ability to protect against a claimed interest, *i.e.*, the expulsion of appellees' partnership interests, and subject MWLP to a substantial risk of incurring multiple or inconsistent obligations. According to appellants, the lower court's finding that $10.5 million was not owed to HALP essentially reversed the bankruptcy court's orders without HALP's presence before the court, and, "to the extent [the trial judge] entertained the issue of overruling an Order that the failure to pay for the Tenants' Initial Improvements was a breach of the Lease, HALP was entitled to be present at trial." Appellant also argued that Berg and Berg, as a general partner of HALP, was a necessary and indispensable party because any disposition in favor of appellees would require it to disgorge any distributions it had received.

Mr. Berg's connections are to all of this, because of the principles under the sections 15643 of the California statute and 16405, I am satisfied that [counsel for appellees'] arguments are correct and that I was incorrect earlier. I don't need to worry or agonize any further over the issues that, in effect, I raised and I believe unnecessarily may have complicated this morning, so for that I apologize. So, I am—and also, I did not have a huge amount of time, but I went back through some of the early issues presented, arguments and such, and, at least as best as I can discern, I don't know what was said by whom at prior points in the case, but some of this was appropriately and adequately addressed by another one of my colleagues. So, that being said, for the clerk's benefit, and to note for her purposes, the motion of defendant Mission West Properties, L.P. and Mission West Properties Incorporated to dismiss or in the alternative to stay, is heard and denied.

Moving on from there, what I would like to do, then—and I would, for whatever it's worth, the got you (sic) provision of Maryland law, I think, is probably, as Mr. Tolchin pointed out,—*I did some further research, even though the cases that were noted don't really address the issues—provides a basis for service of process in Maryland, but that is an academic discussion at this point.*

(Emphasis added.)

After a bench trial, the trial judge concluded that MWLP wrongfully stopped payment of distributions to the other partners. The court denied the relief requested by appellants under their counterclaim.

## LEGAL ANALYSIS

### I

MWLP contends that, under the due process clause of the Fourteenth Amendment, Maryland courts cannot assert personal jurisdiction over it because it lacks minimum contacts with Maryland. MWLP relies on the Supreme Court's decisions in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), *Asahi Metal Industry Co. v.*

*Superior Court of Cal., Solano County*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), and *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Appellees respond that MWLP is domiciled in Maryland because its general partner is a corporation organized under Maryland law. Therefore, appellees conclude, Maryland courts. can assert general personal jurisdiction over MWLP as a domiciliary of Maryland. Alternatively, appellees argue, MWLP was served in Maryland by service upon its general partner in Maryland (i.e., MWINC), and, thus, general personal jurisdiction can be asserted over MWLP.

Important to our analysis is that appellees disavow any reliance on Maryland's Long Arm jurisdiction statute, found at Md.Code (2002 Repl.Vol.), Cts. & Jud. Proc. (C.J.), § 6–103.[7]

---

7. The Long Arm Statute provides:

(a) *Condition.*—If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

(b) *In general.*—A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply goods, food, services, or manufactured products in the State;

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

(c) Applicability to computer information and computer programs.

(1) (i) In this subsection the following terms have the meanings indicated.

(ii) "Computer information" has the meaning stated in § 22–102 of the Commercial Law Article.

Rather, appellees invoke Maryland's general personal jurisdiction statute, C.J. § 6–102:

(a) *A court may exercise personal jurisdiction as to any cause of action over a person domiciled in, served with process in,* organized under the laws of, or who maintains his principal place of business in *the State.*

(b) This section does not limit any other basis of personal jurisdiction of a court of the State.

(Emphasis added.) According to appellees, subparagraph (a) applies because MWINC, MWLP's general partner, is organized under Maryland law and was served with process in Maryland.

## II

Finding that a general partner can be sued for obligations of the partnership and that there is joint and several liability as between the partners, the trial judge focused, in her ruling regarding the failure to join necessary parties, on the fact that one general partner from HELLYER was suing another general partner and another entity, and that the interests of HELLYER "are necessarily effectively represented and protected by Mission West." Regarding whether the circuit court could exercise *in personam* jurisdiction, the trial court opined that, "even though the cases[8] that were noted don't really

---

(iii) "Computer program" has the meaning stated in § 22–102 of the Commercial Law Article.

(2) The provisions of this section apply to computer information and computer programs in the same manner as they apply to goods and services.

**8.** One of the cases to which the lower court referred that "really [didn't] address the issues" was *Springle v. Cottrell Engineering Corporation,* 40 Md.App. 267, 391 A.2d 456 (1978). The *Springle* decision is inapposite because, in that case, the corporation subject to service of process was a foreign corporation. Judge Wilner, writing for this Court, traced the legislative history of Courts and Judicial Proceedings Article, § 6–102 and discussed its interplay with § 6–103. Ultimately, the *Springle* Court concluded that the mere presence of a *foreign* corporation without minimal contacts pursuant to *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), was insufficient to confer *in personam* jurisdiction. *Springle,* unlike the case *sub judice,* involved a

address the issues—provides a basis for service of process in Maryland, but that is an academic discussion at this point." Thus, the trial court's analysis began and ended with the conclusion that the *in personam* jurisdiction was conferred on MWLP by virtue of service on its general partner in Maryland.

### A

Appellees premise their domicile argument on the following misstatement of Maryland law:

> [A] limited partnership ... is domiciled where its partners ... are domiciled[;] this is so because, except for tax and other liabilities and rights created specifically by statute, a partnership has no juridical existence except through its partners.

Although there may have been a time when that was a correct statement of Maryland law, that time has passed.

Contrary to appellees' assertion, under Maryland law today, "A partnership is an entity distinct from its partners." C.A. § 9A–201. This was not always the case. "At common law, a partnership was considered to be an *aggregate* of the individual partners, rather than a distinct legal *entity* separate from the partners." J. William Callison & Maureen A. Sullivan, *P'ship Law & Practice* § 3:1 (2004).

█ In the past, Maryland only viewed partnerships as separate and discrete entities for a few limited purposes, including taxation, and for the purpose of taxation a partnership's domicile was its principal place of business. *McLane v. Judges of App. of Tax Ct. of Balt. City*, 156 Md. 133, 144–46, 143 A. 656 (1928). Now, however, Maryland generally employs the entity theory of partnerships. C.A. § 9A–201. Appellees cannot invoke the domicile basis for general jurisdiction under C.J. § 6–102(a) because, regardless of MWINC's

---

foreign corporation subject to the requirements of registration or qualification, rather than a general partner reincorporated under the laws of Maryland and served with process pursuant to § 6–102.

domicile, MWLP is domiciled either in Delaware or California, but certainly not in Maryland.[9]

Appellees' argument relies heavily upon *C.T. Carden v. Arkoma Associates*, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990), in which the Supreme Court held that, to determine a partnership's citizenship for purposes of federal diversity jurisdiction, under 28 U.S.C. 1332(a), federal courts must include in their analysis the state citizenship of each of the limited and general partners constituting the partnership. In *Lurie v. 8182 Maryland Associates*, 282 Mont. 455, 938 P.2d 676 (1997), the Supreme Court of Montana considered, and rejected, an argument identical to that advanced here by appellees:

> *Carden* involves the interpretation of a federal statute ... which defines federal diversity of citizenship jurisdiction. Montana state district courts do not apply diversity of citizenship principles in order to determine jurisdiction. Rather, they apply Montana statutory law and the "minimum contacts" principles enunciated in *International Shoe Co. v. Washington* ... to determine whether the defendant's activities are so "substantial" or "systematic and continuous" that it can be said the defendant is "found" within the state.

*Id.* at 679. Similarly, it has been suggested under a conflict of laws analysis, "The forum's rules of domicile are applied when domicile is a fact necessary to the judicial jurisdiction of the state of the forum." *Restatement (Second) of Conflict of Laws* § 13 cmt. b (1971) (*Restatement*).

■ Under *Maryland* law, a partnership's domicile is, if nothing else, its principal place of business. *See McLane* at 144–46, 143 A. 656; *but cf. Restatement* § 11 cmt. *l* ("When a domicil is assigned to a corporation, it is always in the state of incorporation."). Consequently, appellees cannot avail themselves of the domicile basis for general jurisdiction, as MWLP

---

9. We need not, and expressly do not decide, whether MWLP should be considered domiciled in Delaware, California, or both, for purposes of our analysis as to whether Maryland has jurisdiction.

is not domiciled in Maryland. *Restatement* § 40 cmt. b ("The mere presence of one of the partners or members in the state is not a sufficient basis for the exercise of judicial jurisdiction over the partnership or association.").

## B

■ We next address appellee's assertion that because MWLP's general partner was served with process in Maryland, Maryland courts may assert general personal jurisdiction over MWLP. We readily agree with appellees that, on the facts of this case, MWLP was properly served with process in Maryland (as far as Maryland law is concerned), and that C.J. § 6–102(a) purports to grant Maryland courts general personal jurisdiction over MWLP based on that in-state service. Contrary to appellee's arguments, however, our inquiry does not end there.

Authoritative commentators have observed, "Literal application of § 6–102(a) might . . . permit jurisdiction under circumstances that would offend due process." John A. Lynch & Richard W. Bourne, *Modern Maryland Civil Procedure* § 3.3, at 3–34 (2d. ed. 2004). The authors continue their analysis regarding general jurisdiction based on in-state service, as applied to a foreign corporation:

> There is some question whether and under what circumstances this provision may be used to obtain jurisdiction against a non-Maryland corporation. On its face, the rule appears addressed only to individual defendants [10] . . . . The service rules of course permit service on corporate agents as well, so the rule could have meant to extend jurisdiction to corporations as well as individuals who are "served with process in . . . the state." This is doubtful for two reasons. First, there was no common law rule to codify respecting

---

**10.** *Cf. Restatement* § 11 cmt. *l* ("No useful purpose, however, is served by assigning a domicil to a corporation. Most of the uses which the concept of domicil serves for individuals . . . are inapplicable to corporations, which do not, for example, vote, marry, become divorced, beget or bear children and bequeath property.").

jurisdiction over foreign corporations. Second, the Supreme Court had long held that service upon a corporate officer or agent within a state is not sufficient to render the corporation amenable to the state's jurisdiction and that instead, the only proper basis for jurisdiction over the corporation involves the business it has conducted *vis-a-vis* the state.

*Id.* at 3–35.

In several decisions, the United States Supreme Court has affirmed the view that in-state service upon an individual authorized (in fact and law) to receive service for a corporation *does not* vest the state's courts with general personal jurisdiction over the corporation when the corporation has no other contacts with the state.[11] In *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 444–47, 72 S.Ct. 413, 96 L.Ed. 485 (1952), the Court said:

> Today if an authorized representative of a foreign corporation be physically present in the state of the forum and *be there engaged in activities appropriate to accepting service or receiving notice on its behalf,* we recognize that there is no unfairness in subjecting that corporation to the jurisdiction of the courts of that state through such service of process upon that representative. This has been squarely held to be so in a proceeding in personam against such a corporation, at *least in relation to a cause of action arising out of the corporation's activities within the state of the forum.*

* * *

---

**11.** The same rule appears in an early Maryland case, *Crook v. Girard Iron & Metal Co.*, 87 Md. 138, 39 A. 94 (1898) ("[S]o long as a corporation confines its operation to the state in which it was created, it cannot be sued in a state where it has no office, or transacts no business, by serving process on its president or other officer when temporarily present within such state."). More recently, in *Springle v. Cottrell Engineering Corp.*, 40 Md.App. 267, 391 A.2d 456 (1978), we held that "in personam jurisdiction will exist with respect to a foreign corporation if service of process is validly effected upon its resident agent in Maryland and at least one of the jurisdictional criteria set forth in [C.J.] § 6-103(b) is shown to exist."

The essence of the issue here, at the constitutional level, is a like one of general fairness to the corporation. Appropriate tests for that are discussed in *International Shoe Co. v. Washington, supra,* 326 U.S. at pages 317–320, 66 S.Ct. at pages 158, 160. *The amount and kind of activities which must be carried on by the foreign corporation in the state of the forum so as to make it reasonable and just to subject the corporation to the jurisdiction of that state are to be determined in each case.* The corporate activities of a foreign corporation which, under state statute, make it necessary for it to secure a license and to designate a statutory agent upon whom process may be served provide a helpful but not a conclusive test.

* * *

Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations.

(Emphasis added.)

In an earlier decision, *James–Dickinson Farm Mortgage Co. v. Harry,* 273 U.S. 119, 122, 47 S.Ct. 308, 71 L.Ed. 569 (1927), the Supreme Court, without much discussion, declared:

First. The objection to the jurisdiction over the corporation was taken by a plea in abatement. The decision thereon was made upon a demurrer to the replication. By these pleadings it was admitted that the residence and principal place of business of the corporation was in Missouri; that it had never been a resident of Illinois; that Dickinson, its president, was in Illinois on business of the corporation at the time of the service; *but that it has not engaged in, or carried on, business within the state. Jurisdiction over a corporation of one state cannot be acquired in another state or district in which it has no place of*

*business and is not found, merely by serving process upon an executive officer temporarily therein, even if he is there on business of the company* .... The objection to the jurisdiction over the corporation should have been sustained. As it was not waived by the later proceeding in the case, the judgment against this defendant is reversed, with directions to dismiss the action as to it.

(Citations omitted.)

In a case in which the defendant was a corporation organized under the laws of the State of West Virginia, and its principal place of business was in the State of New York, the Supreme Court, in *Kendall v. American Automatic Loom Co.,* 198 U.S. 477, 480–483, 25 S.Ct. 768, 49 L.Ed. 1133 (1905), concluded that New York did not have *in personam* jurisdiction, explaining:

Regarding the case as properly here, the question is whether the service made upon the treasurer of the appellee corporation was a valid service upon the corporation itself. We think it was not. It is perfectly apparent that the corporation was, at the time of the service on the treasurer, *doing no business whatever within the State of New York, and that it had never done any business there since it was incorporated in the State of West Virginia.* While we have lately held that, in the case of a foreign corporation, the service upon a resident director of the state where the service was made was a good service where that corporation was doing business within that state (*Pennsylvania Lumbermen's Mut. F. Ins. Co. v. Meyer,* 197 U.S. 407[, 25 S.Ct. 483, 49 L.Ed. 810] ...), *yet such service is insufficient for a court to acquire jurisdiction over the corporation where the company was not doing any business in the state,* and was situated like this company at the time of the service upon the treasurer.

(Emphasis added.)

█ Finally, in addressing the issue of whether service upon an agent of a foreign corporation confers jurisdiction

upon that corporation, the Supreme Court said in *St. Clair v. Cox,* 106 U.S. 350, 359, 1 S.Ct. 354, 27 L.Ed. 222 (1882):

> According to the view thus expressed by the Supreme Court of Michigan service upon an agent of a foreign corporation will not be deemed sufficient unless he represents the corporation in the state. This *representation implies that the corporation does business, or has business in the state for the transaction of which it sends or appoints an agent there.* If the agent occupies no representative character with respect to the business of the corporation in the state, a judgment rendered upon service on him would hardly be considered in other tribunals as possessing any probative force.

(Emphasis added.) *See also Lumiere v. Mae Edna Wilder, Inc.* 261 U.S. 174, 177, 43 S.Ct. 312, 67 L.Ed. 596 (1923) (holding that "jurisdiction over a corporation cannot be acquired in a district in which it has no place of business and is not found, merely by serving process upon an executive officer temporarily therein, even if he is there on business of the company, has been settled.") Notwithstanding that these decisions are not of recent vintage, they remain binding authority, at least in the corporate context. These decisions unequivocally require that the corporate principal engage in or carry on business within the state wherein plaintiff seeks to establish *in personam* jurisdiction. The rule as to corporate principals also requires that the cause of action arise out of the corporation's activities in the state of the forum.

The corporate rule in those cases has recently been extended to partnerships by New Jersey's intermediate appellate court. In *Citibank, N.A. v. Estate of Simpson,* 290 N.J.Super. 519, 676 A.2d 172 (App.Div.1996), the court held that New Jersey's courts could not assert jurisdiction over a foreign partnership simply because one of the partners resided and was served in New Jersey.

The Court, in relying on § 40, Comment b of the Restatement, explained:

We consider first the jurisdictional significance of personal service in this State of one of the law firm's partners. Defendant relies on *R.* 4:4-4(a)(5), which provides that service of original process shall be made upon a partnership by personal service upon a general partner pursuant to *R.* 4:4-4(a)(1). Having made such service upon a general partner in New Jersey, the estate contends that it *ipso facto* acquired *in personam* jurisdiction over the New York partnership. Not so. We point out first that *R.* 4:4-4 does not undertake to define jurisdictional limits. It is rather a mechanical rule that merely prescribes the method of acquiring jurisdiction when constitutional principles of due process of law—not the rule—permit assertion of jurisdiction. That is plain from the structure of the rule as amended effective September 1994. Thus paragraph (a) of the revised rule addresses the manner of personal service on individuals and entities who have a territorial presence in this State, that is, those who are subject to the State's exercise of *in personam* jurisdiction on the fundamental predicate of their being here. That predicate alone satisfies due process requirements, and no further inquiry need be undertaken. Paragraph (b) of the revised rule addresses the mechanics by which *in personam* jurisdiction may be obtained by constructive or substituted services over those individuals and entities who are not present in the state but who, as a matter of due process of law, are subject to the exercise of its long-arm jurisdiction. The rule prescribes how they shall be served. Constitutional principles determine whether that service is effective for obtaining jurisdiction. The rule's express caveat in respect of long-arm jurisdiction has always been the consistency of its exercise with due process, a caveat now spelled out in *R.* 4:4-4(b)(1). Clearly then, since the law firm is a New York partnership and does not do business in New Jersey, it is paragraph (b) of the rule, namely the long-arm jurisdiction provision, that applies and not paragraph (a).

Our conclusion rests not only on our parsing of the service rule but, more fundamentally, on the nature of a

partnership as a juridical entity having an existence separate from that of the partners. Plainly, a foreign corporation or unincorporated association would not be subject to this State's *in personam* jurisdiction merely because a person authorized to receive service on its behalf happened to be present in this State and was personally served here. We are convinced that the same is true in respect of a foreign partnership. Indeed, that is the *Restatement* rule. Thus *Restatement (Second) of Conflict of Laws* § 40 (1971), dealing with jurisdiction over partnerships and other unincorporated associations, explains as follows in comment b:

If the partnership or other unincorporated association is subject to suit in its firm or common name, the state may exercise judicial jurisdiction over it under such circumstances as would justify the exercise of jurisdiction over an individual....

*The mere presence of one of the partners or members in the state is not a sufficient basis for the exercise of judicial jurisdiction over the partnership or association.* (Emphasis added).

Although the issue has not been addressed in a reported opinion in this jurisdiction, we are persuaded of the correctness of the *Restatement* rule. New Jersey typically gives considerable weight to *Restatement* views, and has, on occasion, adopted those views as the law of this State when they speak to an issue our courts have not yet considered. We do so now, fully endorsing and adopting the principle stated in comment b.

We add, however, this caveat. Here, the partner who was served in New Jersey, John L. Loehr, himself had had no contact with the transaction that is the subject of the third-party complaint. The matter might well be different if the partner who resided in and was personally served in New Jersey had been third-party defendant Keltner. That is to say, the conduct of each partner binds the partnership. Thus, if the partner whose conduct is the basis of the claim against the partnership were subject to personal service in this State, then service upon that partner would effect

jurisdiction over the partnership. As articulated by *Donatelli v. National Hockey League*, 893 F.2d 459, 466 (1st Cir.1990), the activities of the partner are generally attributed to the partnership and jurisdiction over the partnership follows from the partner's contacts, if sufficient, regardless of the absence of independent contacts between the partnership *qua* entity and the forum.

Since, however, the law firm's partner who was personally served in New Jersey engaged in no conduct related to the transaction in controversy, we need not address the issue further.

*Id.* at 176–78.

■ Appellees cite *First American Corp. v. Price Waterhouse LLP*, 154 F.3d 16 (2d Cir.1998), arguing that the case provides authority for their position. It does not. The basis for that decision's holding that in-state service upon a partner of a foreign partnership confers jurisdiction in that state's courts was that, under the applicable state law, "a partnership (unlike a corporation) has no separate existence" from its partners. *Id.* at 19. In Maryland, we follow the entity theory of partnership, not the aggregate theory; under our law, partnerships *do* have an existence separate from their partners, and so *First American Corp.* is inapplicable.

Similarly, appellees cite *Stoffer v. CDT Choice Products, Inc.*, 2002 Ohio 4064 (Ct.App. 5th Dist.), in which the court held that in-state service upon a limited partnership's general partner sufficed to permit the court to assert personal jurisdiction over the limited partnership. The case is inapplicable, however, because (1) the limited partnership had conducted some amount of business in the forum, and (2) there is no indication in the opinion that the limited partnership was not a domestic limited partnership.

We hold that because, under Maryland law, MWLP is an entity distinct from its constituent partners, and because MWLP has never conducted *any* activity of any kind in Maryland, either directly or through MWINC,[12] despite the

---

12. Mission West L.P. is a Delaware limited partnership with its principal place of business in Cupertino, California and it owns no property,

service of process on MWLP's general partner in Maryland, our courts cannot constitutionally assert general personal jurisdiction over MWLP. A traditional "minimum contacts" analysis, under *International Shoe*, is unnecessary because, in this case, there simply are *no* contacts to analyze.[13] The judgment must be vacated as to MWLP for lack of personal jurisdiction, and because MWINC faces liability only by virtue of its status as corporate general partner of MWLP, the judgment must be vacated as to MWINC as well.[14]

---

conducts no business, and has no employees in the State of Maryland. Its only connection with the State is that its general partner, Mission West Properties Inc., was reincorporated in Maryland in 1999. The injury for which relief is sought occurred in California; the agreements were negotiated and HALP was formed under the laws of California. In fact, the Partnership Agreement contains a choice of law provision which binds the parties to apply California law in any dispute. Service of process upon Mission West L.P. was made in California, rather than in Maryland.

**13.** Service upon MWLP's general partner in Maryland does not bring this case within *Burnham v. Superior Court of California*, 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990) (holding that, with respect to natural persons, at least, in-state service of process always creates general personal jurisdiction over the person served), because no one has ever acted on MWLP's behalf in Maryland sufficient to justify the fiction that MWLP has been present in the jurisdiction. *Cf. Int'l Shoe Co.*, 326 U.S. at 316–17, 66 S.Ct. 154.

**14.** The effect of the disposition of this appeal was discussed in the following rebuttal argument before this Court by Robert R. Moore, counsel for appellants:

There is, the case [in California] has been stayed. We had a case management conference this week in the Santa Clara County Superior Court, the court has been keeping track of it, we are asked to appear every three months to see what the status of the case is. The Court: That really isn't the same case, is it? A: Yes. It's our case. That is our case. They moved to stay the case in California. But, yes, that is our case. I mean, it's tied up with all the same issues. Now the question is and I agree with the Court, I think that as far as I know the Statute of Limitations is stayed by the stay of that case. Whether they could file a cross-complaint right now, I haven't . . . The Court: . . . Well if it's stayed, it's still there. A: It's still there. It has not been dismissed. The Statute is not running on that case. It was in fact stayed three or four months after filing. It's still active and all that the court needs to be told is the stay is lifted, move forward.

# JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY VACATED.

# COSTS TO BE PAID BY APPELLEE.

## APPENDIX