895 A.2d 1006

**REPUBLIC PROPERTIES CORPORATION, et al.**

v.

**MISSION WEST PROPERTIES, LP, et al.**

**No. 41 Sept. Term, 2005.**

Court of Appeals of Maryland.

April 10, 2006.

Edward J. Tolchin (Fettmann, Tolchin & Majors, P.C., on brief), Fairfax, VA, for Petitioners.

Robert R. Moore (Allen Matkins Leck Gamble & Mallory, L.L.P., San Francisco, CA; Charles S. Hirsch, Robert A. Scott of Ballard Spahr Andrews & Ingersoll, L.L.P., Baltimore, MD, all on brief), for Respondents.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

HARRELL, Judge.

"In the late 1930s, Winston Churchill disclaimed any ability to forecast the Soviet Union's reaction to Nazi aggression, reputedly terming the Russian colossus 'a riddle wrapped in a mystery inside an enigma.' That phrase might just as aptly describe the doctrinal vagaries of the concept of personal jurisdiction." *Donatelli v. National Hockey League,* 893 F.2d 459, 462 (1st Cir.1990). The numerous interconnected business entities involved in the present case further complicate this already challenging area of the law. We consider here whether a Maryland state court may exercise personal jurisdiction over a foreign limited partnership whose only connection to Maryland consists of its corporate managing general partner's re-incorporation in Maryland. We consider also whether that general partner itself may be held liable for the actions of the foreign limited partnership entity, occurring outside of Maryland, in a contractual dispute among the partners of a second, distinct foreign limited partnership of which the first foreign limited partnership is the general partner.

## I.

The premise of the cause of action underlying this case is about its only relatively straight-forward aspect.[1] Hellyer Avenue Limited Partnership ("HALP") was established in the summer of 2000, pursuant to the California Uniform Limited Partnership Act, for the purpose of developing, constructing, and managing a headquarters building in California for a communications company. The principal office and place of business of HALP also is in California. HALP consists of: Mission West Properties, L.P. ("MWLP"), the managing general partner and registered agent of HALP; Republic Properties Corporation ("Republic"), also a general partner of HALP; and Steven Grigg ("Grigg"), David Peter ("Peter"),

---

1. As we relate the participants, it brings to mind the (ungrammatical) sports aphorism "you can't tell the players without a program." *See* footnote 4, *infra.*

and Mentmore Partners LLC ("Mentmore"), the three limited partners of HALP. The present action was brought by Republic, Grigg, Peter, and Mentmore (collectively the "Suing HALP Partners") against MWLP, the managing general partner of HALP, and Mission West Properties, Inc. ("MWINC"), the general partner of MWLP.

MWLP was formed as a limited partnership under Delaware law, but maintains its principal place of business in California. MWINC, the general partner of MWLP, was incorporated initially under the laws of California as a real estate investment trust, but later was re-incorporated in 1999 under the laws of Maryland. As required under Maryland law, MWINC named a registered agent in Maryland as part of its re-incorporation under Maryland law.

The Suing HALP Partners filed a complaint in the Circuit Court for Baltimore City alleging that MWLP, acting through its general partner MWINC, breached the HALP partnership agreement by improperly diluting the interests of the Suing HALP Partners in HALP and failing to make owed distributions. The complaint named as defendants MWLP and MWINC. The Circuit Court denied MWLP's and MWINC's motions to dismiss for lack of personal jurisdiction. After a week-long bench trial, the trial judge concluded that, under California law, MWLP and MWINC breached the partnership agreement. Accordingly, judgments for damages were entered in favor of the Suing HALP Partners against both defendants jointly and severally.

The Court of Special Appeals, in a reported opinion, *Mission West Properties, L.P. v. Republic Properties Corporation*, 162 Md.App. 17, 873 A.2d 372 (2005), vacated the judgments against MWLP and MWINC. The intermediate appellate court determined that the Circuit Court lacked personal jurisdiction over MWLP. *Mission West*, 162 Md. App. at 38, 873 A.2d at 384. Because MWLP was not domiciled in Maryland, and although "MWLP was properly served with process in Maryland," it "never conducted *any* activity of any kind in Maryland." *Mission West*, 162 Md.

App. at 30, 37, 873 A.2d at 380, 384 (Emphasis in original). Derivative of its conclusion regarding MWLP, the Court of Special Appeals vacated the judgment against MWINC as "MWINC face[d] liability only by virtue of its status as corporate general partner of MWLP." *Mission West,* 162 Md.App. at 38, 873 A.2d at 385.

We granted the Suing HALP Partners' Petition for Writ of Certiorari to consider whether: (1) the Court of Special Appeals erred in concluding that the Circuit Court lacked personal jurisdiction over MWLP where the foreign limited partnership was served with process upon the Maryland resident agent of its general partner, MWINC,[2] a corporation that re-incorporated in Maryland, and (2) the Court of Special Appeals erred in vacating the judgment of the Circuit Court against MWINC "because MWINC face[d] liability only by virtue of its status as corporate general partner of MWLP."[3] *Republic v. Mission West,* 388 Md. 97, 879 A.2d 42 (2005).

---

**2.** MWLP and MWINC assert in their joint brief that MWLP was served with process in California through registered mail. While the Court of Special Appeals also made mention in a footnote in its opinion of this assertion, *see Mission West Properties, L.P. v. Republic Properties Corporation,* 162 Md.App. 17, 37 n. 12, 873 A.2d 372, 384 n. 12 (2005), we have not been able to find any evidentiary support in the Record Extract to establish affirmatively that claim. We assume for purposes of our analysis, therefore, that MWLP was served only through service of process upon the Maryland resident agent of its general partner, MWINC.

**3.** For purposes of precision and focus, we have collapsed and re-written the questions presented for our review. In their Petition for Writ of Certiorari, the Suing HALP Partners proposed the following questions:

> (1) Did COSA [the Court of Special Appeals] err when it ruled that "the judgment must be vacated as to MWLP for lack of personal jurisdiction, and because MWINC faces liability only by virtue of its status as corporate general partner of MWLP, the judgment must be vacated as to MWINC as well"?
> (2) Did COSA err in concluding that it must vacate otherwise proper judgments against MW[INC] because it found that the Circuit Court lacked jurisdiction over another party-defendant, MW[LP]?
> (3) Did COSA err in concluding that the Circuit Court lacked jurisdiction over MW[LP] given that MW[LP] is domiciled in Maryland and was served with process in Maryland?

## II.

The Court of Special Appeals ably stated the relevant facts and procedural posture of this case: [4]

Stellex Microwave Systems, Inc. (Stellex Microwave) was a high-tech communications company with its principal place of business in Palo Alto, California. The company's management wanted to relocate its headquarters to the Silicon Valley region of California, but the company could not afford to build such a facility and could not obtain suitable financing. Stellex Microwave was a wholly-owned subsidiary of Stellex Industries, Inc. ("Stellex Industries"), also known as Stellex Technologies, Inc. Stellex Industries was a wholly-owned subsidiary of Mentmore Holdings Corporation, which, in turn, was owned by two trusts.

Stellex Microwave's management tried to negotiate a deal with Carl Berg, a prominent Silicon Valley real estate developer. He "controls" a California construction company called Berg & Berg Enterprises (B & B).[1] Berg is also president and CEO of MWINC, a real estate investment trust incorporated under the laws of California and reincorporated under the laws of Maryland, with its principal place of business in California. MWINC is the corporate general partner of MWLP, which itself is a Delaware limited partnership with its principal place of business in California. Nothing in the record shows that either MWINC or MWLP ever transacted any business in Maryland.

---

(4) Did COSA err in failing to interpret Maryland jurisdictional statutes in a manner consistent with the legislative intent expressly stated in the statutes?

(5) Did COSA err in misinterpreting and misapplying partnership statutes with respect to a jurisdictional issue?

(6) Did COSA err in interpreting and applying Maryland jurisdictional statutes?

**4.** The Court of Special Appeals also provided, in an appendix to its opinion, a helpful graphical representation of the various entities involved in the present case and their relationships. *Mission West,* 162 Md.App. at 39, 873 A.2d at 385. It serves as the "program" alluded to in footnote 1 of this opinion, which we gratefully adopt as an appendix here.

Stellex Microwave's negotiations with Berg were unsuccessful. As a fallback measure, Stellex Microwave contracted with Republic, a corporation organized under the laws of the District of Columbia, with its principal place of business there. Under their agreement, Republic was to provide a headquarters to Stellex Microwave.

Steven Grigg and David Peter, both officers of Republic, restarted negotiations with Berg on behalf of Stellex Microwave. Through negotiations, Grigg, Peter, and Berg agreed that all the parties would form a joint-venture limited partnership to construct a headquarters for Stellex Microwave. The partnership would then lease the facility to that company, with the partnership itself being the landlord. B & B owned a suitable lot on Hellyer Avenue in San Jose, California, so they named their partnership the Hellyer Avenue Limited Partnership (HALP).

The constituents of HALP were MWLP, as managing general partner, Republic, as general partner, Grigg and Peter individually, as limited partners, and Mentmore Partners LLC, a Delaware company with its principal place of business in New York. Mentmore Partners was established by Richard Kramer and William Remley for the sole purpose of holding an interest in HALP.[1] MWLP held a 50% interest in the partnership, and the interests of all the other partners (all of whom were affiliated with Kramer and Remley) held the other 50%.

The HALP limited partnership agreement essentially conditioned the membership of all partners except MWLP on Stellex Microwave's payment of all its obligations under the lease. MWLP contends that one of those obligations was paying B & B for certain work Stellex Microwave hired B & B to do on the facility; appellees dispute that that payment was an obligation *under the lease*. MWLP asserts that payment was not timely made to B & B, that Stellex Microwave defaulted and the default was never cured, and accordingly, MWLP purported to expel all the other partners and stopped paying them their distributions from HALP's income.[1]

Appellees, therefore, brought suit against MWLP for the distributions they contend were owed. The circuit court denied appellants' motions to dismiss for lack of jurisdiction: [5]

\* \* \* \* \* \*

I have thought again about the integration and the operation of the partnership statutes, the California Revised Partnership Act and, as it is characterized in the California Revised Limited Partnership Act, and the arguments presented and I'm now satisfied that my ruling earlier was incorrect. I don't believe that HELLYER is a necessary party [1]. . . .

The real effect and import of the integration of those California Statutes and the principles of partnership law satisfy me that, because a general partner can be sued for obligations of the partnership and jointly and severally liable, and because we have here, at least in part, one general partner from HELLYER suing another general partner and another entity, that the interests of HELLYER are necessarily effectively represented and protected by Mission West. Without getting into the identities of what Mr. Berg's connections are to all of this, because of the principles under the sections 15643 of the California statute and 16405, I am satisfied that [counsel for the Suing HALP Partners] arguments are correct and that I was incorrect earlier. I don't need to worry or

---

**5.** In this footnote, the Court of Special Appeals observed that:

This case was not specially assigned; however, the parties had argued their motions to dismiss for lack of personal jurisdiction and for failure to join necessary parties before the chambers judge. The motions were denied by the chambers judge in terse orders that stated "for reasons explained on the record at argument." Despite that reference to the explanation on-the-record by the chambers judge, we were unable to find any transcript of the hearing in the record or in the record extract. Appellants again raised the motions before the trial judge, and the ruling reproduced herein represents the basis of the denial of the motions to dismiss for failure to join necessary parties and lack of *in personam* jurisdiction.

*Mission West,* 162 Md.App. at 23 n. 5, 873 A.2d at 376 n. 5.

agonize any further over the issues that, in effect, I raised and I believe unnecessarily may have complicated this morning, so for that I apologize.

* * * * * *

So, that being said, for the clerk's benefit, and to note for her purposes, the motion of defendant Mission West Properties, L.P. and Mission West Properties Incorporated to dismiss or in the alternative to stay, is heard and denied.

Moving on from there, what I would like to do, then— and I would, for whatever it's worth, the got you (sic) provision of Maryland law, I think, is probably, as [counsel for the Suing HALP Partners] pointed out,—*I did some further research, even though the cases that were noted don't really address the issues—provides a basis for service of process in Maryland, but that is an academic discussion at this point.*

After a bench trial, the trial judge concluded that MWLP wrongfully stopped payment of distributions to the other partners. The court denied the relief requested by appellants under their counterclaim. (Emphasis in original) (Internal footnotes omitted).

*Mission West,* 162 Md.App. at 21–25, 873 A.2d at 374–77.

III.

■ Sections 6–102(a) and 6–103 [6] of the Courts and Judicial Proceedings ("C & JP") Article of the Maryland Code

---

**6.** C & JP § 6–103 provides, in part:

(a) *Condition.*—If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.
(b) *In general.*—A court may exercise personal jurisdiction over a person, who directly or by an agent:
(1) Transacts any business or performs any character of work or service in the State;
(2) Contracts to supply goods, food, services, or manufactured products in the State;

(1973, 2002 Repl.Vol.) addresses the conditions for establishing personal jurisdiction in Maryland over non-resident defendants. In our analysis, we shall focus exclusively on C & JP § 6–102(a),[7] which provides that "[a] court may exercise personal jurisdiction as to any cause of action over a person domiciled in, served with process in, organized under the laws of, or who maintains his principal place of business in the State." The Suing HALP Partners assert two theories, under C & JP § 6–102(a), by which a Maryland court could acquire and exercise personal jurisdiction over MWLP. We shall address each in turn.

## A.

 Petitioners argue that the Circuit Court possessed jurisdiction over MWLP because the general partner of MWLP was re-incorporated in Maryland, thus causing MWLP to be domiciled in the State as well. As the Suing HALP Partners stated in their brief, "except for tax and other

---

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as a surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

7. Apparently aware that they failed to raise an argument under C & JP § 6–103 before the Court of Special Appeals, *see Mission West,* 162 Md.App. at 26–27, 873 A.2d at 377 ("Important to our analysis is that appellees disavow any reliance on Maryland's Long Arm jurisdiction statute, [citing C & JP § 6–103]."), the Suing HALP Partners waited until rebuttal at oral argument before this Court before asserting here the applicability of C & JP § 6–103. The Suing HALP Partners also failed to include such an argument in their brief here. Given the timing of insertion of this argument, the lack of opportunity for MWLP and MWINC to respond, and the failure to brief properly the authorities, we shall not consider an argument for personal jurisdiction based on C & JP § 6–103.

liabilities and rights created specifically by statute, a partnership has no juridical existence except through its partners." In *McLane v. State Tax Commission*, 156 Md. 133, 145–46, 143 A. 656, 661 (1928), this Court, as Petitioners correctly noted, recognized that a partnership may be treated as a distinct legal entity for the purpose of taxation. We now also recognize that a limited partnership may be considered a distinct legal entity from its constituent partners for purposes of determining personal jurisdiction questions in our courts.

■ A partnership is defined in the Maryland Revised Uniform Partnership Act ("RUPA") of the Corporations and Associations ("C & A") Article of the Maryland Code (1975, 1999 Repl.Vol.) as "an association of two or more persons to carry on as co-owners a business for profit. . . ." C & A § 9A–101(i). A limited partnership is defined under the Maryland Revised Uniform Limited Partnership Act ("RULPA"), Md. Code (1975, 1999 Repl.Vol.), as "a partnership formed by two or more persons under the laws of the State and having one or more general partners and one or more limited partners." C & A § 10–101(i). An important similarity in the statutory treatment of the two business entities in Maryland is the application of an "entity" theory with regard to both. Under RUPA, which took effect in 1982, "[a] partnership is an entity distinct from its partners." C & A § 9A–201. As we noted in *Creel v. Lilly*, 354 Md. 77, 89–90, 729 A.2d 385, 392 (1999),

RUPA's underlying philosophy differs radically from UPA's, [which governed partnerships before the enactment of RUPA,] thus laying the foundation for many of its innovative measures. RUPA adopts the "entity" theory of partnership as opposed to the "aggregate" theory that the UPA espouse[d]. Under the aggregate theory, a partnership is characterized by the collection of its individual members, with the result being that if one of the partners dies or withdraws, the partnership ceases to exist. On the other hand, RUPA's entity theory allows for the partnership to continue even with the departure of a member because it views the partnership as "an entity distinct from its partners." (Internal citations omitted).

The Suing HALP Partners, quoting from *C.T. Carden v. Arkoma Associates,* 494 U.S. 185, 190, 110 S.Ct. 1015, 1018, 108 L.Ed.2d 157, 165 (1990), argue that the jurisdictional domicile of a limited partnership is the domicile of its partners because "while a corporation would be viewed as a legal entity for purposes of jurisdiction, all other entities 'would be treated for purposes of the diversity statute pursuant to ... [t]he tradition of the common law, which is to treat as legal persons only incorporated groups and to assimilate all others to partnerships.' " (Internal quotations omitted). Yet, as the Court of Special Appeals noted in its opinion in the present case, *see Mission West,* 162 Md.App. at 29, 873 A.2d at 379, the Supreme Court, in *C.T. Carden,* was addressing only whether an artificial entity may be considered a "citizen" of the state under whose laws it was created with regard to subject matter jurisdiction, in the context specifically of determining diversity jurisdiction in federal courts. *C.T. Carden,* 494 U.S. at 187, 110 S.Ct. at 1017, 108 L.Ed.2d at 163. In addition, Maryland, through its statutes, applies the entity theory approach to partnerships and limited partnerships. Therefore, we find *C.T. Carden* not instructive in determining the domicile of a foreign limited partnership for purposes of personal jurisdiction in Maryland's state courts.

In the present case, we need not consider whether the state of formation of a limited partnership or the state in which the limited partnership maintains its principle place of business, or any combination of the two, is determinative of a limited partnership's domicile. The state of incorporation of the corporate entity that may be a general partner (managing or otherwise) of a foreign limited partnership is not, however, the domicile of the limited partnership for the purpose of determining personal jurisdiction in Maryland's courts.

### B.

Alternatively, the Suing HALP Partners argue that MWLP was served with process in Maryland under Maryland Rule 2–124(f) because they served the Maryland resident

agent of MWLP's general partner, MWINC, and, therefore, satisfied the basis of C & JP § 6–102(a) providing for jurisdiction "over a person ... served with process in ... the State." Maryland Rule 2–124(f), which describes the procedure for serving a "limited partnership," provides that "[s]ervice is made upon a limited partnership by serving its resident agent. If the limited partnership has no resident agent or if a good faith attempt to serve the resident agent has failed, service may be made upon any general partner or other person expressly or impliedly authorized to receive service of process." The Suing HALP Partners assert that service of process according to Rule 2–124(f) alone establishes a basis for personal jurisdiction over MWLP.

■ Assuming that MWLP, a foreign limited partnership, was served properly with process through service on the Maryland resident agent of its general partner, MWINC, as outlined under Maryland Rule 2–124(f),[8] such service of pro-

---

**8.** The argument in the present case involves a dispute over personal jurisdiction, not insufficiency of service of process, *see* Md. Rule 2–322(a); *see also Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 444, 72 S.Ct. 413, 417, 96 L.Ed. 485, 491–92 (1952) ("The necessary result was a finding of inadequate service in each case and a conclusion that the foreign corporation was not bound by it. The same would be true today in a like proceeding where the only service had and the only notice given was that directed to a public official who had no authority, by statute or otherwise, to accept it in that kind of a proceeding."). Therefore, we do not have occasion here to determine whether MWLP, a Delaware limited partnership with its principal place of business in California and which conducts no business in Maryland and thus does not compel appointment of a resident agent in Maryland, was served validly with process through the Maryland resident agent of its corporate general partner in accordance with Maryland Rule 2–124(f).

Nonetheless, we note that Rule 2–124(f) refers to service of process procedures for a "limited partnership." At no place in the Civil Procedure for Circuit Court Title of the Maryland Rules, however, is the term "limited partnership" defined. In RULPA, "limited partnership" is defined: " 'limited partnership' and 'domestic limited partnership' mean a partnership formed by two or more persons under the laws of the State...." C & A § 10–101(i); *see also* C & A § 9A–101(h) (providing a similar definition under RUPA). RULPA also separately defines a "foreign limited partnership": "a partnership formed under the laws of any state other than the State of Maryland or under the laws of a

cess alone, under the circumstances in the present case, is insufficient to establish personal jurisdiction over MWLP. Rule 2–124(f) does not delimit the jurisdictional limits of Maryland courts, but rather serves as part of the service of process rules that define the procedural requirements that enable a Maryland court to obtain jurisdiction over a defendant where constitutionally permitted. *See* Md. Rule 1–201(b) ("These rules shall not be construed to extend or limit the jurisdiction of any court or, except as expressly provided, the venue of actions."); One Hundred Twenty–Seventh Report of the Standing Committee on Rules of Practice and Procedure, Letter by the Rules Committee Chairman (Judge Alan M. Wilner) to the Court of Appeals (March 18, 1994) ("The amendments to Rules 2–124 and 3–124 are designed to make clear how service is to be effected on general and limited partnerships, limited liability companies, and unincorporated associations."); One Hundred Twenty–Seventh Report of the Standing Committee on Rules of Practice and Procedure, Rule 2–124, Reporter's Note (1994) (stating that section (f) was "proposed to address a gap in the current rules, which do not

---

foreign country...." C & A § 10–101(f); *see also* C & A § 9A–101(f) (providing a similar definition under RUPA). In addition, Maryland Rule 2–124(*o*), which sets forth the procedures for substituted service upon the Maryland Department of Assessments and Taxation, states that "[s]ervice may be made upon a corporation, *limited partnership,* limited liability partnership, limited liability company, *or other entity required by statute of this State to have a resident agent ...."* (Emphasis added). While a limited partnership formed in Maryland is required to name a resident agent in Maryland, a foreign limited partnership is not, unless it elects to conduct business lawfully in Maryland. *Compare* C & A § 10–104(a) *with* C & A § 10–902. Moreover, in discussing proposed amendments to Rule 2–124 on 7 June 1994 during this Court's hearing, Judge Wilner, then Chairman of the Standing Committee on Rules of Practice and Procedure and Chief Judge of the Court of Special Appeals, stated: "we really try to set out all of the different entities *that now exist in Maryland* and to provide a clear statement as to each one as to how you go about serving them." (Emphasis added). Finally, the language of the Rule the Suing HALP Partners rely upon to authorize how proper service on MWLP may be made ("If the limited partnership has no resident agent ... service may be made upon any general partner ...") is the "reserve parachute" language of the Rule. This portion of the Rule seems intended to be deployed only upon the failure of service on the resident agent of the limited partnership.

address service upon ... a limited partnership"). Therefore, satisfaction of the procedural requirement, Maryland Rule 2–124(f), does not confer, by itself, personal jurisdiction over MWLP by a Maryland state court.

■ In *Pennoyer v. Neff*, 95 U.S. 714, 733, 24 L.Ed. 565, 572 (1878), the U.S. Supreme Court concluded that when an action "involves merely a determination of the personal liability of the defendant, he must be brought within its jurisdiction by service of process within the State, or his voluntary appearance." As the U.S. Court of Appeals for the Fourth Circuit subsequently noted, "[i]t remains well-established that a state's sovereignty over persons, property and activities extends only within the state's geographical borders and that therefore its laws have no operation in another state except as allowed by the other state or by comity." *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 941 (4th Cir.1994) (citing *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1878)); *see also McSherry v. McSherry*, 113 Md. 395, 400, 77 A. 653, 655 (1910) ("Where, however, a defendant appears generally, either in person or by attorney, or process is served upon him within the State, the Court acquires jurisdiction over him for the purpose of the suit.").

The Supreme Court continues to recognize the validity of conferring personal jurisdiction based solely on the physical presence of the defendant within the forum. In *Burnham v. Superior Court of California*, 495 U.S. 604, 610, 110 S.Ct. 2105, 2110, 109 L.Ed.2d 631, 639 (1990), the Court addressed "whether due process requires [an analysis] between the litigation and the defendant's contacts with the State in cases where the defendant is physically present in the State at the time process is served upon him." The defendant, while visiting California on business, was served with a California court summons and a copy of the plaintiff's (the defendant's wife) divorce petition following a visit with one of their children, who resided in California with the plaintiff mother. *Burnham*, 495 U.S. at 608, 110 S.Ct. at 2109, 109 L.Ed.2d at 638. The Supreme Court commenced its analysis by recogniz-

ing that "[a]mong the most firmly established principles of personal jurisdiction in American tradition is that the courts of a State have jurisdiction over nonresidents who are physically present in the State." *Burnham*, 495 U.S. at 610, 110 S.Ct. at 2110, 109 L.Ed.2d at 639. This jurisdictional principle, with regard to service upon a physically present defendant, exists "without regard to whether the defendant was only briefly in the State or whether the cause of action was related to his activities there." *Burnham*, 495 U.S. at 612, 110 S.Ct. at 2111, 109 L.Ed.2d at 640. Yet, while instructive, as the Court of Special Appeals correctly noted in the present case, *see Mission West*, 162 Md.App. at 38 n. 13, 873 A.2d at 384 n. 13, *Burnham* was confined to circumstances where service of process was made upon a natural person who was personally within the forum state when served. The present case is not analogous to that context.

Since *Pennoyer*, advancements in commerce and transportation have created a need for determining the jurisdictional reach of state courts over non-residents not dependant solely upon a territorial basis. *See Burnham*, 495 U.S. at 617, 110 S.Ct. at 2114, 109 L.Ed.2d at 643; *Lesnick*, 35 F.3d at 942. Further muddying the traditional physical presence jurisdictional standard was the increased usage of the corporate entity and the fiction it created.[9] In *St. Clair v. Cox*, 106 U.S. 350, 355, 1 S.Ct. 354, 358, 27 L.Ed. 222, 224 (1882), the Supreme Court noted this concern as corporations increasingly began to enter multiple geographical fora throughout the country: "This doctrine of the exemption of a corporation

---

**9.** This Court grappled with this development in *Crook v. The Girard Iron & Metal Co.*, 87 Md. 138, 39 A. 94 (1898). We stated that "so long as a corporation confines its operation to the State in which it was created, it cannot be sued in a State where it has no office or transacts no business, by serving process on its president or other officer, when temporarily present within such State." *Crook*, 87 Md. at 140, 39 A. at 95 (Citations omitted). Nonetheless, we noted that "[i]n determining the liability of a corporation to process and action within a state foreign to its creation, it is oftentimes important to ascertain the extent and character of the dealings or transactions had or done within such State." *Id.*

from suit in a state other than that of its creation, was the cause of much inconvenience and often of manifest injustice." The Court observed that while "[individuals] can act by themselves, and upon them process can be directly served, . . . a corporation can only act and be reached through agents." *St. Clair*, 106 U.S. at 356, 1 S.Ct. at 359, 27 L.Ed. at 225. Yet, service upon the agent of a foreign corporation in the forum was not sufficient by itself to confer personal jurisdiction. As the Supreme Court remarked,

> we are of the opinion that when service is made within the state upon an agent of a foreign corporation it is essential, in order to support the jurisdiction of the court to render a personal judgment, that it should appear somewhere in the record . . . that the corporation was engaged in business in the state.

*St. Clair*, 106 U.S. at 359, 1 S.Ct. at 362, 27 L.Ed. at 226. Thus, where a corporation once was required to be present physically in the state to be subjected to *in personam* jurisdiction in that forum, the Supreme Court, in *St. Clair*, recognized that a corporation could be considered present within a state through its authorized agents that conducted the corporation's activities in the forum state.

Extending the notion of establishing *in personam* jurisdiction through implied consent,[10] in *Pennsylvania Fire Insurance Company of Philadelphia v. Gold Issue Mining & Milling Company*, 243 U.S. 93, 94, 37 S.Ct. 344, 345, 61 L.Ed. 610, 615–16 (1917), the Supreme Court determined that a Missouri state court could establish jurisdiction over a defen-

---

**10.** As the Court of Special Appeals noted in *Springle v. Cottrell Engineering Corporation*, 40 Md.App. 267, 273, 391 A.2d 456, 461 (1978):

> Whereas under the earlier law State jurisdiction rested exclusively upon the "presence" of a foreign corporation presumed by reason of its transacting business in the State, the device of requiring the appointment of a resident agent authorized to accept service of process added another theory, or fiction, upon which such jurisdiction could be based—that of consent. This is a theory that won apparent Supreme Court approval in *Pennsylvania Fire Insurance Co. v. Gold Issue M. & M. Co.*, 243 U.S. 93[, 37 S.Ct. 344, 61 L.Ed. 610] (1917).

dant insurance company, an Arizona corporation that insured buildings in Colorado, where the superintendent of the insurance department of Missouri was served with process on behalf of the insurance company. The Court specifically highlighted that the defendant obtained a license to do business in Missouri and, as a result, voluntarily filed a power of attorney consenting to service of process upon the superintendent as equating to personal service upon the company. *Pennsylvania Fire*, 243 U.S. at 94, 37 S.Ct. at 345, 61 L.Ed. at 616. Accordingly, the Court concluded that the defendant, by voluntarily filing the power of attorney document, created the equivalent of an agent authorized to receive service. *Pennsylvania Fire*, 243 U.S. at 95, 37 S.Ct. at 345, 61 L.Ed. at 616.

Decided on the same day as *Pennsylvania Fire*, the Court in *Philadelphia & Reading Railway Company v. McKibbin*, 243 U.S. 264, 265, 37 S.Ct. 280, 280, 61 L.Ed. 710, 711–12 (1917), determined that "[a] foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the state in such a manner and to such extent as to warrant the inference that it is present there." The defendant, a Pennsylvania corporation that operated a railroad in Pennsylvania and New Jersey, was sued in New York based on service of process on the "defendant's president, while he was passing through New York, engaged exclusively on personal matters unconnected with the company's affairs." *McKibbin*, 243 U.S. at 266, 37 S.Ct. at 281, 61 L.Ed. at 712. The Supreme Court concluded that the defendant company was not doing business within New York because it was not situated within the State, had no dock, freight, or passenger ticket office within the state, transacted no business within the state, and no business was transacted in the state on its behalf. *Id.*

Almost four decades later, the Supreme Court, in its landmark decision, *International Shoe Company v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), settled upon a more flexible analytical scheme, founded upon the Due Process Clause of the Fourteenth Amendment. The Court determined that the State of Washington could establish *in*

*personam* jurisdiction to collect taxes under a state statute from a Delaware corporation where the foreign corporation was served with process through personal service upon a salesman employed by the corporation and received a copy of the notice, by registered mail, at its corporate address in Missouri.[11] *International Shoe,* 326 U.S. at 312, 66 S.Ct. at 156, 90 L.Ed. at 99. After recognizing generally the historical physical presence requirement for determining *in personam* jurisdiction divined in *Pennoyer,* the Court stated:

> [b]ut now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." (Citations omitted).

*International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158, 90 L.Ed. at 102. Then, considering the traditional physical presence requirement with regard to corporate entities, the Court noted:

---

11. In *Thomas v. Hudson Sales Corp.,* 204 Md. 450, 459, 105 A.2d 225, 228–29 (1954), we summarized the facts in *International Shoe:*

International Shoe, a Delaware corporation, with its principal place of business in St. Louis, Missouri, and engaged in the manufacture of footwear, was sued by the State of Washington for Unemployment Compensation contributions on thirteen salesmen residing in the State of Washington and who were paid by commissions based upon the amount of sales. They were under the direct supervision and control of sales managers located in St. Louis. The corporation had no office in the State of Washington and made no contracts either for sale or purchase of merchandise there. It supplied its salesmen with a line of samples which they displayed to prospective purchasers. On occasion they rented permanent sample rooms for exhibiting samples in business buildings or rented rooms in hotels for that purpose. The cost of such renting was paid by the corporation. The salesmen who solicited the orders forwarded them to St. Louis for acceptance or rejection. When accepted the merchandise was shipped f. o. b. from points outside Washington State to the purchasers within the State and invoiced at the place of shipment from which collection was made. The salesmen had no authority to enter into contracts or to make collections.

Since the corporate personality is a fiction, although a fiction intended to be acted upon as though it were a fact, *Klein v. Board of Tax Supervisors*, 282 U.S. 19, 24, 51 S.Ct. 15, 16, 75 L.Ed. 140, 73 A.L.R. 679, it is clear that unlike an individual its "presence" without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it. To say that the corporation is so far "present" there as to satisfy due process requirements, for purposes of taxation or the maintenance of suits against it in the courts of the state, is to beg the question to be decided. For the terms "present" or "presence" are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process. L. Hand, J., in *Hutchinson v. Chase & Gilbert*, 2 Cir., 45 F.2d 139, 141. Those demands may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there. An "estimate of the inconveniences" which would result to the corporation from a trial away from its "home" or principal place of business is relevant in this connection. *Hutchinson v. Chase & Gilbert, supra*, 45 F.2d [at] 141.

"Presence" in the state in this sense has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given. *St. Clair v. Cox*, 106 U.S. 350, 355, 1 S.Ct. 354, 359, 27 L.Ed. 222; *Connecticut Mutual Life Ins. Co. v. Spratley*, 172 U.S. 602, 610, 611, 19 S.Ct. 308, 311, 312, 43 L.Ed. 569; *Pennsylvania Lumbermen's Mut. Fire Ins. Co. v. Meyer*, 197 U.S. 407, 414, 415, 25 S.Ct. 483, 484, 485, 49 L.Ed. 810; *Commercial Mutual Accident Co. v. Davis*, 213 U.S. 245, 255, 256, 29 S.Ct. 445, 448, 53 L.Ed. 782; *International Harvester Co. v. Kentucky*, [234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479] *supra*; *cf. St. Louis S.W.R. Co. v.*

*Alexander,* 227 U.S. 218, 33 S.Ct. 245, 57 L.Ed. 486, Ann. Cas.1915B, 77. Conversely it has been generally recognized that the casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there. *St. Clair v. Cox, supra,* 106 U.S. [at] 359, 360, 1 S.Ct. [at] 362, 363, 27 L.Ed. 222; *Old Wayne Mut. Life Ass'n v. McDonough,* 204 U.S. 8, 21, 27 S.Ct. 236, 240, 51 L.Ed. 345; *Frene v. Louisville Cement Co., supra,* 77 U.S.App.D.C. [129,] 133, 134 F.2d [511,] 515, 146 A.L.R. 926, and cases cited. To require the corporation in such circumstances to defend the suit away from its home or other jurisdiction where it carries on more substantial activities has been thought to lay too great and unreasonable a burden on the corporation to comport with due process.

*International Shoe,* 326 U.S. at 316–17, 66 S.Ct. at 158–59, 90 L.Ed. at 102–03. As the Court reiterated in *Burnham,* however, *"International Shoe* confined its 'minimum contacts' requirement to situations in which the defendant 'be not present within the territory of the forum.' " *Burnham,* 495 U.S. at 621, 110 S.Ct. at 2116, 109 L.Ed.2d at 646.

Later yet, in *Perkins v. Benguet Consolidated Mining Company,* 342 U.S. 437, 438, 72 S.Ct. 413, 414–15, 96 L.Ed. 485, 489 (1952), the Supreme Court determined that an Ohio state court did not violate the Due Process Clause by subjecting a foreign corporation to jurisdiction with regard to an action that did not arise in Ohio and did not relate to the corporation's activities within the state, but where the corporation had been carrying on a continuous and systematic, but limited, part of its general business in the forum and the president of the corporation was served with a summons in the state while engaged in doing business in Ohio on behalf of the corporation.[12] The Court noted first that "[a]ctual notice of

---

12. In *Thomas, supra,* 204 Md. at 461, 105 A.2d at 229–30, we summarized the facts in *Perkins:*

the proceeding was given to the corporation ... through regular service of summons upon its president while he was in Ohio acting in that capacity." *Perkins*, 342 U.S. at 439–40, 72 S.Ct. at 415, 96 L.Ed. at 489. The Court noted it would not be unfair to subject a corporation to the jurisdiction of the Ohio court with regard to a cause of action arising out of the corporation's activities within the state where an authorized representative of a foreign corporation was present within the forum and "engaged in activities appropriate to accepting service or receiving notice on its behalf." *Perkins*, 342 U.S. at 444, 72 S.Ct. at 418, 96 L.Ed. at 492. Reiterating the analysis developed in *International Shoe*, the Court stated that "[t]he amount and kind of activities which must be carried on by the foreign corporation in the state of the forum so as to make it reasonable and just to subject the corporation to the jurisdiction of that state are to be determined in each case." *Perkins*, 342 U.S. at 445, 72 S.Ct. at 418, 96 L.Ed. at 492.

With regard to an action not arising out of the corporation's activities within the forum state, however, the business conducted in the state must be "sufficiently substantial." *Perkins*, 342 U.S. at 447, 72 S.Ct. at 419, 96 L.Ed. at 493. "The corporate activities of a foreign corporation which, under state statute, make it necessary for it to secure a license and to designate a statutory agent upon whom process may be served provide a helpful but not a conclusive test." *Perkins*, 342 U.S. at 445, 72 S.Ct. at 418, 96 L.Ed. at 492. Ultimately, the Court determined that the defendant corporation conducted the required amount of business in Ohio in order to establish jurisdiction over the corporation with regard to an action that

---

The suit was for dividends and damages upon causes of action arising from activities of the corporation outside of the State of Ohio. The president and general manager of that Philippine corporation, whose activities there were halted by the war, returned to his home in Ohio where he carried on a continuous and systematic supervision and direction of the corporation's wartime activities. He used local banks for carrying the corporation funds and as transfer agents of its stock. He also held several directors' meetings in an office in his home where he also kept files of the corporation. The president was served in Ohio.

did not arise in the state and did not relate to the corporation's activities within the forum. *Perkins,* 342 U.S. at 448, 72 S.Ct. at 420, 96 L.Ed. at 493.

The Maryland Court of Special Appeals faced a confluence of these same issues in *Springle v. Cottrell Engineering Corporation,* 40 Md.App. 267, 391 A.2d 456 (1978). One of those questions was "whether, and to what extent, jurisdiction may constitutionally attach to a foreign corporation simply by virtue of its being served with process in Maryland." *Springle,* 40 Md.App. at 270, 391 A.2d at 460. The plaintiff, a resident of North Carolina, sued the defendant corporation, incorporated in Delaware, but maintaining its principle place of business in Virginia, for injuries he suffered while aboard the defendant's vessel in North Carolina. *Springle,* 40 Md. App. at 268, 391 A.2d at 459. As required under Maryland law for companies that qualify to do business in the State, the defendant corporation had appointed and maintained a resident agent in Maryland, who was authorized to accept service of process on its behalf. *Springle,* 40 Md.App. at 270, 391 A.2d at 459. Suit was filed in a Maryland state court and service of process was made upon the corporation's resident agent in Maryland. *Id.*

Writing at the time for the panel of the Court of Special Appeals, Judge Wilner observed that C & JP § 6–102(a) "would appear to provide an independent basis for jurisdiction over appellee, a basis apart from those set forth in [C & JP] § 6–103 and founded solely upon appellee's being served with process in Maryland." *Springle,* 40 Md.App. at 270, 391 A.2d at 459–60. In supplying a detailed review of the historical development of early jurisdictional statutes in Maryland, *see Springle,* 40 Md.App. at 271–79, 391 A.2d at 460–64, the intermediate appellate court noted the impact *International Shoe* had on the jurisdictional landscape in developing a "new, more flexible, test." *Springle,* 40 Md.App. at 280, 391 A.2d at 464. The court commented, however, that

International Shoe Co. left open the question of whether a foreign corporation possessing the requisite minimum contacts with a State to establish general jurisdiction could yet

be sued on a cause of action that was not related to its activities in the State. That question was answered in *Perkins v. Benquet Consolidated Mining Co.,* 342 U.S. 437[, 72 S.Ct. 413, 96 L.Ed. 485] (1952), when the Court concluded that due process would not be offended by the exercise of such jurisdiction. Whether jurisdiction should be exercised in such a case was a matter for the State to determine. *Springle,* 40 Md.App. at 281, 391 A.2d at 465.

After *International Shoe,* states began "to enact what became known as 'long-arm' statutes, extending local jurisdiction over foreign corporations based solely upon the most minimal activities within the State." *Springle,* 40 Md.App. at 281, 391 A.2d at 465. Maryland followed suit in 1964. *Id.* Commenting on the new statute, the Court of Special Appeals wrote:

Section 95,[13] as then adopted, was identical to § 1.02 of the Uniform Act, and provided three alternative bases of *in personam* jurisdiction: *domicile in the State, organization under the laws of the State, or maintenance of a principal place of business in the State.* This was more restrictive than what was permitted under preexisting law under which jurisdiction was possible even where none of these three circumstances existed; but, in light of the expanded scope of jurisdiction permitted under § 96 (the general counterpart to s 1.03 of the Uniform Act),[14] this was not thought to be a problem. (Emphasis added).

*Springle,* 40 Md.App. at 283, 391 A.2d at 466. In discussing the modification made to the statute, which is included in the current version of C & JP § 6–102(a), the court noted the following:

The dilemma we face here arose from what, if read literally, would have been perhaps the most sweeping and dramatic, and yet the most silent and probably unwitting, change yet made by the General Assembly in this area. In 1973, the Legislature enacted the Courts article, a recodifi-

---

13. A precursor of C & JP § 6–102.

14. A precursor of C & JP § 6- 103.

cation of the laws relating to courts and judicial proceedings. What had formerly been article 75, § 95—that bypassed backwater of State jurisdiction—was recodified as § 6–102(a). The Revisor's Note says of this new section that "subsection (a) presently appears as Article 75, § 95."

This is not the case. As noted, § 6–102(a) provides for personal jurisdiction as to any cause of action over a person *served with process* in the state. These words were *not* in the former law. They were apparently added by the Code Revision Commission subcommittee on Courts, although the minutes of the meeting of the subcommittee reflect no debate, discussion, or reasons given for the addition of that phrase. It was simply added to the draft of § 6–102 that then existed and that, prior to the addition, was more faithful to the source law. The amendment was approved without discussion (at least without discussion reflected in the minutes) by the full Commission at its meeting on June 7, 1973, and thus was included in the draft bill submitted to the Legislature. No further amendments were made, or apparently offered, to that section, which was enacted as submitted by the Code Revision Commission.

Compounding the somewhat misleading statement that subsection (a) "presently appear[ed]" in the law was this additional part of the Revisor's Note:

"Subsection (a) states the general rule that a state has jurisdiction over its residents and over non-residents served with process in the state as to any cause of action wherever it arose.

"Additional jurisdiction is conferred by § 6–103 which grants jurisdiction over a broader class of persons as to causes of action arising in Maryland."

(Emphasis in original) (Alterations in original).

*Springle,* 40 Md.App. at 285–86, 391 A.2d at 467–68. While noting that this alteration did not change the law with respect to individuals (i.e., if served with process in the State, an individual is subject to the jurisdiction of the court, absent a statutory or common law exemption), the intermediate appel-

late court noted that the statute "purport[ed] to authorize jurisdiction over a foreign corporation whose only contact with the State of Maryland was its compliance with the qualification requirements...." *Springle*, 40 Md.App. at 286–87, 391 A.2d at 468. The court determined that C & JP § 6–102(a) should not be read so expansively, however, given the "total legislative history and interpretative background...." *Springle*, 40 Md.App. at 287, 391 A.2d at 468. Accordingly, it concluded that "service of process, in Maryland, upon a resident agent appointed by a foreign corporation will subject the corporation to State court jurisdiction if, in addition to the fact, and validity, of that service, it is shown that the corporation has sufficient contact with the State to make it constitutionally subject to suit here." *Springle*, 40 Md.App. at 288, 391 A.2d at 469.

Although the cases discussed, *supra*, concerned corporate business entities, we perceive no substantial reason to treat a foreign limited partnership differently with regard to analyzing *in personam* jurisdiction.[15] Therefore, service of process

---

**15.** While the provisions of RUPA apply also to limited partnerships, limited partnerships are distinct from partnerships and partake of many significant characteristics exhibited by corporations. One important difference between a partnership and a limited partnership in Maryland is that, unlike with a partnership, formation of a limited partnership requires a prescribed act of filing articles with the Maryland Department of Assessments and Taxation. *Compare* C & A § 9A–202 *with* C & A § 10–201. This is similar to the filing requirement for forming a corporation. *See* C & A § 2–102. As we stated in *Klein v. Weiss*, 284 Md. 36, 50–51, 395 A.2d 126, 135 (1978):

> [l]imited partnerships were unknown at common law; they are exclusively a *creature of statute*, their main purpose being to permit a form of business enterprise, other than a corporation, in which persons could invest money without becoming liable as general partners for all debts of the partnership. The general purpose of [limited partnership] acts was not to assist creditors, but was to enable persons to invest their money in partnerships and share in the profits without being liable for more than the amount of money they had contributed. The reason for this was to encourage investing. (Emphasis added) (Citations omitted) (Internal quotations omitted) (Second alteration in original).

In *Della Ratta v. Larkin*, 382 Md. 553, 578–79, 856 A.2d 643, 658 (2004), we recognized also that "we have analogized the relationship between general and limited partners to that between corporate di-

within Maryland upon the resident agent of a domestic corporate general partner of a foreign limited partnership does not confer, by itself, personal jurisdiction over the foreign limited partnership in a Maryland court.

⬛⬛⬛⬛ We have stated that "to exercise either general or specific jurisdiction, the defendant must maintain sufficient minimum contacts with the forum such that the exercise of jurisdiction meets the 'general test of essential fairness.' " [16] *Presbyterian Univ. Hosp. v. Wilson,* 337 Md. 541, 551–52, 654 A.2d 1324, 1330 (1995) (citing *Camelback Ski Corp. v. Behning,* 312 Md. 330, 336, 539 A.2d 1107, 1110 (1988)). Thus, "when the cause of action does not arise out of, or is not directly related to, the conduct of the defendant within the forum, contacts reflecting continuous and systematic general business conduct will be required to sustain jurisdiction." *Camelback,* 312 Md. at 338, 539 A.2d at 1111 (citing *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Hanson v. Denckla,* 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283, 1296 (1958); and *Camelback Ski Corp. v. Behning,* 307 Md. 270, 279–80, 513 A.2d 874, 878–79 (1986)); *see also Beyond Systems, Inc. v.*

---

rectors and shareholders...." Additionally, as we discussed, *supra,* domestic limited partnerships, as well as foreign limited partnerships doing business in Maryland, are required to establish a resident agent to effectuate service. *See* C & A §§ 10–104(a), 10–902. This, of course, is true also for corporations. *See* C & A § 2–104.

**16.** As we reiterated in *Presbyterian University Hospital v. Wilson,* 337 Md. 541, 551 n. 2, 654 A.2d 1324, 1329 n. 2 (1995), based on this Court's discussion in *Camelback Ski Corporation v. Behning,* 312 Md. 330, 339, 539 A.2d 1107, 1111 (1988),

we did not mean to suggest that there is some form of jurisdiction in between general and specific jurisdiction. We merely indicated that in circumstances such as that in the instant case, where a defendant may not have sufficient contacts to support general jurisdiction, a trial judge need not segregate factors tending to support general jurisdiction from those supporting specific jurisdiction. Rather, the court may utilize factors relevant to general jurisdiction in making a determination regarding the propriety of the forum's exercise of specific personal jurisdiction over a defendant.

*Realtime Gaming Holding Co., LLC,* 388 Md. 1, 22, 878 A.2d 567, 580 (2005) ("If the defendant's contacts with the State are not the basis for the suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent contacts with the State. To establish general jurisdiction, the defendant's activities in the State must have been continuous and systematic.") (Citations omitted) (Internal quotations omitted). Because, on this record, MWLP had no contacts with Maryland other than the fact that its corporate managing general partner re-incorporated in the State, the Suing HALP Partners failed to satisfy the requisite constitutional requirements of demonstrating MWLP's minimum contacts with the forum. The Court of Special Appeals's judgment was correct.

## IV.

While Maryland courts may obtain jurisdiction over MWINC as it became incorporated under the laws of this State, that alone does not enable the Suing HALP Partners to recover a judgment against MWLP for allegedly breaching the HALP partnership agreement. The Suing HALP Partners, however, argue that "MW[INC] is liable in and for itself, and can be sued with or without MW[LP] as a party." Thus, the Suing HALP Partners argue that the money judgment against MWINC should stand.

There is no evidence in this record that MWINC, the general partner of MWLP, was itself the alleged wrongdoer with regard to the alleged harm to the Suing HALP Partners. While the Suing HALP Partners assert that MWINC controls MWLP, the Circuit Court's judgment against MWINC appears based solely upon MWINC's status as the general partner of MWLP and not upon any actions it committed in its individual corporate capacity. *See* Memorandum Opinion, *Republic Props. Corp. v. Mission West Props., L.P.,* No. 24–C–00–005675 (Apr. 8, 2004) (referring to MWLP and MWINC as "Defendants," but noting in a footnote the involvement of MWINC individually in its status as the general partner of the

limited partnership).[17] Thus, the Court of Special Appeals was correct on this score as well.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE DIVIDED EQUALLY BY PETITIONERS.

## APPENDIX

**HALP-Related Entities**

---

**17.** The Suing HALP Partners assert that a "general partner of a limited partnership has the rights and powers and is subject to the restrictions and liabilities of a partner in a partnership," citing C & A § 10–403(a), and thus "all partners are liable jointly and severally for all *obligations of the partnership* unless otherwise agreed by the claimant or provided by law," citing C & A § 9A–306(a) (Emphasis added). Once the judgment against MWLP is eliminated there are no obligations of the partnership.